Next case is K. A. vs. Attorney General of the United States, Mr. Rosen. Good morning, Your Honors. May it please the Court, Matthew Rosen for Petitioner K. A. I'd like to reserve three minutes for rebuttal. Granted. This Court should reject the government's request to send this case back to the BIA without deciding any of the questions that have been pending before it for more than two years. While remand is the least the Court can do, given the government's acknowledgement the BIA did not adequately consider the issues presented in the case, it does not adequately protect my client from the risk that in the absence of a stay of removal he will be removed from this country before his motion is even decided. The government's request is a transparent ploy to revive issues that the government forfeited by failing to raise them before the BIA in the first instance. The government already made that request by motion. This Court already rejected it, and it should do the same here. The issues presented... Can I just ask a quick question about this remand issue? Because it is a little perplexing in the sense of... It's interesting. But as I understand it, what you're saying in your client's interest is that there should not be a remand and instead the Court should conduct a detailed legal analysis of whether or not the BIA correctly decided that your client's robbery conviction amounts to a theft offense. Is that right? So if we don't remand, we're into that legal analysis. The Court should at a minimum resolve the two principal issues that were briefed in this case, which is the timeliness of petitioner's motion and whether his New Jersey robbery conviction is an aggravated felony. Let me start with that second question. Robbery in New Jersey is not an aggravated felony because it is broader than the generic federal definition of theft in two ways. First, a defendant can be convicted of robbery, unlike theft, for taking property that he believes honestly that he has a right to take. That is clear from the Mejia decision by the New Jersey Supreme Court. And it is also clear that if this were purely a theft conviction, that that would not be a basis for convicting someone of theft either under New Jersey law or under the laws of any of the states that we've identified, any treatise that we've looked at. Is that a legal question, whether your client was an aggravated felon?  This Court has said, I believe, in Chardar and I think multiple cases, whether a conviction is an aggravated felony. So there's no agency deference due here. It's teed up de novo for this Court. There is agency deference on interpretation of the INA. No, I mean on the question of whether your client was an aggravated felon. Right. I don't think there's any open question on what the INA would be. And as I understand your argument with respect to the theft offense, the agency erred because it did not follow the categorical approach. If it had followed the categorical approach, it would have said that it was broader and doesn't qualify. That's correct. As the government acknowledges, the only thing that the BIA said about why this is an aggravated felony is to cite an unpublished decision by this Court that the government acknowledges did not have any actual analysis. All right. Even if we agree with you on that, why wasn't it a crime of violence? New Jersey statute section 2C15-1A has three subsections that are all elements. Right. And why don't we just apply the de novo legal review to that and say that applying the modified categorical approach, we know that we drilled down to the Shepard documents and we know that your client used a hammer, so it's subsection 1 that we're dealing with, which is inflicts bodily injury, uses force upon another, and that equals an aggravated felony. Well, let me say a few things in response to that. First of all, we believe the government has waived, has forfeited, rather, any argument that this is a crime of violence. We can affirm for any reason supported by the record. We think that that is not a ground on which this Court could affirm because the government did not raise that before the BIA. It doesn't matter. We affirm judgments with some regularity, not a majority of the time, but with some regularity we affirm judgments of district courts and agencies for reasons not supported by the record, even when the prevailing party didn't join and address that issue. I would add on top of that that the briefs do not address the issue at all. Petitioners have not had an opportunity to develop an argument. But, I mean, isn't the point, at one level we're limited by chenery principles. At one level we're stuck with whatever the BIA did. We can't inject judicial reasoning for an agency decision. Beyond chenery, that's maybe separation of powers problems. But what we've got is we have one sentence from the BIA that I can find, and maybe counsel knows of more, that basically says that K.A.'s robbery conviction is an aggravated felony theft offense. So that's the conclusion. Obviously, we aren't bound by every piece of reasoning in support of that. But doesn't that satisfy chenery to take us up to the point that we're evaluating the legal correctness of that, and that we can now, once we've satisfied chenery, affirm on any ground that's supported before us, waiver aside. I think that that would be sufficient to allow the court to resolve the question of whether the BIA correctly determined that the offense was an aggravated felony theft offense. But I don't think it reaches the question of whether it is an aggravated felony crime of violence, given the petitioner has had no notice of any argument that the government has raised at any point that would make, as to why this would be an aggravated felony crime of violence. Isn't that what we did in Singh, though? Our 2006 decision in Singh? I'm actually not sure the answer to that question. But I do know that it would be the petitioner has viable arguments that he should have an opportunity to develop, as to why this crime is not a crime of violence. First, your your honor mentioned that it was a bodily injury offense. That is not actually there's nothing in the plea colloquy that suggests that he admitted to inflicting bodily injury on anyone that was charged. But that was not convicted. So we don't actually know from the record of conviction which of the prongs of aggravated of New Jersey robbery was the basis for his conviction. In addition, the this court does not have a decision conclusively construing the other prongs of the New Jersey robbery conviction to determine whether any of those would be aggravated felony crimes. So the problem, though, is this. If the BIA's analysis on this on this score is incomplete and only goes halfway there, isn't isn't the rule remand? I mean, I mean, that that's that's pretty black letter. Right. If if if we can do some legal analysis, but if the BIA hasn't given sufficient reasons for its conclusion, the rules remain. Right. Well, in this particular instance, because of the fact that the government at no point in any proceeding, not before the IJ in the first instance, not before the the BIA on the first and second trip to the BIA. At no point has it ever suggested that this conviction is a crime of violence. And it might be different if the government had actually made an argument before the court that this is a crime of violence and that there was an. So. So. So I get that. If the BIA on its own, maybe didn't go halfway there. And so once the BIA goes halfway there, it looks like they're they're running this argument on on categorical or modified categorical. We don't know. I don't think. But but they're going down that road. Once they go down the road, if we say, OK, you went down the road, you didn't go all the way. Isn't the answer for us to either say it's a pure legal question that we can finish out or BIA? You have a choice. Either back up and don't go anywhere down the road or go all the way down the road. I think it is as to the road the BIA went down, which is aggravated felony theft offense, but not crime of violence. But isn't the reason it went down that aggregate? It didn't go down that aggravated felony offense just for frivolity. It went down that to get to crime of violence. Right. No, it went down that to get to particularly serious crime. The analysis is that if the crime is an aggravated felony theft offense, it qualifies automatically for purposes of asylum as a particularly serious crime. And if it additionally has a greater than five year sentence, it qualifies as a particularly serious crime for purposes of withholding removal. There is no at no point in that analysis. Does that analysis pass through crime of violence? And I would say that at a minimum, this court should resolve the crime. The theft offense question, because it is teed up by the briefs and it would assist the BIA in resolving this case if there is a remand. Even if this court remands, I think the minimum that we would want this court to do would be to resolve the theft defense issue, to resolve the change of country conditions issue and to ensure that there is some sort of stay that remains in place. This court has authority to retain jurisdiction and maintain the stay so that my client is not actually removed before the remand that this court orders actually happens. He is removed and he prevails later. Can you come back? That's that's actually an open question. We've not able. We've done some research on this and not been able to determine the court has said that his motion to reopen can still be decided if he is removed from the country. But the question here is not just will his motion to reopen be granted, but can he obtain the relief that he's seeking? The relief he's seeking is asylum and withholding removal. Asylum. I think perhaps if he were granted asylum, he would be able to. That's that is a ground for entering the country. But withholding of removal is relief from removal. And as far as we can tell, we've not been able to identify any decision that would give my client sufficient assurance that if he were able to obtain withholding of removal after he was actually removed, that he would be able to return to the country. So would you. So let me just pose this hypothetical. If we were able to remand to the agency, but remand while retaining jurisdiction, the exception, it's not the rule. It's rare that would possibly assume it preserves the stay. Does that that is beneficial to your client and seems that that's the reason your client opposes remand? Would that assuage your client's objections to remand? That would go a long way to alleviate my client's concerns. We would still want the court to resolve the issues that have been briefed with the benefit of counsel, because there is no assurance that my client would have counsel before the before the BIA. So there's still some benefit in resolving the issues that are presented, but that would go a long way to alleviating my client's concerns. Thank you. Thank you, Mr. Rosen. We'll hear you on rebuttal. Miss Frayer. Good morning. And may it please the court. Alison Frayer for the attorney general. Remand is quite simply the only way forward in this case. Regardless of Kay's prima facie eligibility for asylum and withholding of removal, which is why we're talking about what's an aggravated felony and what's not. Regardless of that, he will remain eligible for cat deferral. There's no crime he could commit that would preclude him from seeking deferral of removal under the Convention Against Torture. So the board will need to look at the case again in order to more fully evaluate the country, the changed country conditions. Why? What if he's an aggravated felon because the robbery was a crime of violence? He'd still be eligible for cat deferral. That wouldn't answer that question. It's only. But shouldn't we. Mr. Rosen wants us to decide the legal question in this case. One of the legal questions is, is robbery as a felony theft offense. And I'm sorry, I don't recall from your brief, but do you do you concede that the agency erred by failing to apply the categorical approach? No, we did not. All right. OK, but if the parties disagree about that, I mean, that's a legal issue. We should decide it. This court could decide it, but it would be better not to. Why? Regardless, if let me let me ask you to assume something. Assume for a minute that the BIA should have applied the categorical approach and it didn't. You want us to send it back without telling the BIA that it made a mistake. That would not be a tremendous waste of agency and judicial resources. No, I think the waste of resources would be to opine on that issue because it doesn't answer any of the questions. No, no. I mean, look, there's all different types of remand. There is that there's kind of the quick turnaround remand where something comes, go back. And then there's the type of remand that where we conduct a detailed analysis and say these reasons that you've provided don't measure up legally and they're wrong. So so at one level, this focus on remedy, it matters. Why? Why don't we what's wrong with us doing a more detailed analysis than evaluating at the end of that detailed analysis of a legal issue? Whether remand is appropriate. You're not just asking for remand. You're asking for quick turnaround remand, which seems quite extraordinary. I'm not sure if it's extraordinary, but I am asking this court to remand without opining on the legal question. That's extraordinary. OK, it doesn't answer the jurisdictional with that. And why speak out? Why not just what's your position of remand? Well, we retained if we were to do something else extraordinary, which is retain jurisdiction. That way, Kaye gets to preserve his stay. Your concerns, at least, are I'm surprised that you didn't offer something a little more extraordinary to say we think there should be remand. And we'll consent to this court retaining jurisdiction. He gets the benefit of his stay. You get the benefit of what you want to have in front of the BIA. What's your position on a remand while retaining jurisdiction? It would be inappropriate in this case. The government can't agree to retaining jurisdiction where there's simply no provision for it. That happens. That's that. That's the court's ability to remand. That's that. There's a bunch of cases where courts have have done so. Florida Power and Light v. Lorien, there's a provision in there that says ordinarily we don't retain jurisdiction. In certain instances, we can. So the lack of a provision, there might not be a statutory provision, but the Supreme Court contemplates this instance. Yes, but it would still be inappropriate in this context where Kaye's inadmissibility and therefore his removability is not an issue. This is all in the context of a discretionary motion to reopen to seek relief. So there's no question that he is not supposed to be here. The question is whether he can apply for relief and protection in order to stay anyway. So where his removability is not an issue and he's seeking the discretionary motion. But he wants asylum withholding and cat protection, right? He does. And what if let me give you another hypothetical. What if he's an aggravated felon because it's a crime of violence? Then he's not entitled as a matter of law to asylum or withholding. He's only entitled to pursue cat relief, right? That's correct. So wouldn't the overburdened agency welcome the opportunity to hear a cat case rather than having to deal with an asylum withholding and cat case? I mean, I just I don't understand your argument that this court should not rule on legal issues. We would prefer to make. I don't think I've heard that argument yet. You've started to say, but I haven't heard you say why we shouldn't do the modified categorical approach ourselves. Because the case has to go back either way. So there's but in a totally different iteration, that's Judge Phipps's point. Maybe I shouldn't talk about my experience as a trial judge. But trust me, trial judges are really happy when courts of appeals take a case that might be really big and send it back really small. Trial judges are thrilled when that happens. I would tend to agree. I clerked for the IJs and I would tend to agree. So, you know, you know, the idea if this case goes back to the IJ just as a cat case, the IJ is thrilled. What I hear you saying is just send it back. Quick remand. Don't opine. And then give the agency a chance under my hypothetical assumption to err on the law. Err about a categorical approach with respect to aggravated felony for the robbery conviction. To err on the modified categorical approach. Send it right back to this court. And then another three-judge panel can do all the work that we've just done studying those legal issues and then opine on the law. Is that what you're asking? I mean, not for all those things to go like that. So on remand, the board doesn't even need to address his criminal convictions. Why? The changed country conditions piece answers everything that he wants. He wants reopening for asylum withholding and CAT. If he can't show a material change in Nigeria that would warrant reopening, he can't get reopening for any of those things. Right. Okay. But what if he does show changed country conditions? Then all these other legal issues that I'm challenging you about are back on the table, aren't they? They are in a way, but the legal landscape has also been changed by this court's en banc opinion in Bastardo Vale. Now, joining the other circuits, an aggravated felony, a conviction doesn't need to be an aggravated felony in order to be a particularly serious crime that would bar him from asylum and withholding of removal. So it's entirely possible that on remand, the board doesn't touch the Ag Fel question. They don't need it. It doesn't answer anything. They can find that his convictions, either for robbery with a 10-year conviction, possession with intent to distribute within 1,000 feet of a school. Any of these things could be particularly serious crimes in the agency's discretionary weighing of the factors that are looked at, and they don't have to answer the aggravated felony question. But isn't that something really just truly a discretionary call that this court makes? Because it sounds like there's different ways this case could break. It could resolve on changed country conditions. If it resolves on changed country conditions, then, yeah, maybe remand is the cleanest way because all these other issues aren't necessary. The flip side is, though, it's already made its way to us, and it's made its way to us on something other than just changed country conditions. It's made its way to us with the theft defense issue and the categorical approach and the modified categorical approach. So in light of the fact that it comes to us as something other than just a changed country conditions case, isn't the best exercise of our discretion to say, look, we're going to answer what we can before us if there's open questions that we can't answer as a matter of law? Then we'll hand it back, not the quick turnaround remand, with the hope that the changed country conditions solves it, only to learn maybe it does not. And then as Judge Harbin spins out, we're off with another panel. That's certainly an option. I don't mean to – the government does not mean to imply that this court could not get to the Agfel theft defense question. Our point simply is that it doesn't answer even whether he's prima facie eligible for asylum and withholding. So since it doesn't answer any of the questions, the fastest way for K.A. to get the answer that he seeks on his motion to reopen is to send it back. If he has to wait longer for a decision from this court, that's just more time that he's waiting for the answer that he's been seeking. But he's willing to wait, apparently, for this court. Apparently. Why didn't BIA address the changed country conditions in the first place? They did, though they didn't address the one specific argument that K.A. presses. The bisexual argument. Yeah, and specifically the same-sex marriage prohibition act in Nigeria. Why not? I can't answer that. I don't know. It was properly raised below, which is why it's a legal question that this court can consider, even though he's inadmissible as a crime involving moral torture. Do you concede that under Chattery we can't address the question of whether the robbery conviction was a crime of violence? Yeah, yes. I think I think I have to. It's because the agency only considered robbery as a theft offense. No, actually, it's because the remand is futile doctrine is a way is an exception to Chattery. If the government or the court can confidently predict the result on remand, then you can get there first, especially for legal questions. But it is suggested by the record that K.A. had a weapon at the time of the robbery and he was charged with committing offenses with that weapon, that it was an unlawful weapon. But the what he admitted to didn't include that in the plea colloquy. So we but we know it's not subsection three, though, right? I'm not entirely sure that we do not to the degree of certainty that the remand is futile doctrine would require. I think it would be proper for the board to find that on remand. But that doctrine, particularly given this court's strict reading of Chattery, that doctrine requires such certainty that. So let me just trace back and make sure I'm hearing what you're saying. What you're saying is there's really there's there's two classes of issues, one of which is this is this robbery is crime of violence, theft, offense, robbery, crime of violence, and the other is changed country conditions. What you're telling us is that if we remand on changed country conditions, that could solve everything. And then what you're telling us at the same time is that Chattery doesn't allow us to fully consider that robbery as theft, robbery, theft, defense, categorical approach, crime of violence argument. Are you saying that we absolutely can't consider that first argument under Chattery or only the crime of violence part? But that's essential, right? I mean, it's essential to his eventual prima facie eligibility under for asylum and withholding, but it's not essential to the disposition of the petition for review. Because prima facie eligibility is just one barrier among many that he must get over in order to meet the requirements for the motion reopen, which remains discretionary anyway. But even to meet the legal requirements for the motion, prima facie eligibility for two of the three forms of relief and protection he is seeking is just one of the burdens he has to meet. So we can consider it will allow us to do some consideration. It's not a complete bar. I would say that I would permit this court to review the board's determination that New Jersey robbery is not is an egg fell. That defense, but not the egg fell crime of violence, because that's a separate analysis. If the court has no more questions. All right. Thank you. Mr. Rosen. Your Honor, the government just acknowledged that this court is capable of resolving the aggravated felony theft of evidence issue without the need for a remand. It's sort of extraordinary that the government has asked the court not to decide the issue when it has not even taken a position on it in this court. So we think at a minimum this court ought to resolve this issue as to the as to the remaining issues. Crime of violence. The government acknowledges that the court can't resolve it. But we do think that the court could say that there is a forfeiture. The court, while the court does have has in some context. Addressed, excused a forfeiture. The government has not even made an argument in this case as to why its forfeiture should be excused. I would point this court to the Johnson case, which applies the ordinary rule of appellate forfeiture to the government, even in terms of affirming and alter alternate crowns. I want to respond to the government's arguments under the start of all the volley about finding particular particularly serious crimes in the absence of a aggravated felony. The government has not taken a position, has never articulated a basis on which the crime could be found to be a particularly serious crime independent of being aggravated felony. That is an issue that would require some fact development. We think it's forfeited. But if the court doesn't think it's forfeited, we think it requires some fact development. So it would have to go back to the BIA for that kind of fact development. Because the framework for determining a particular serious crime under this court's decision in Lusiga and the BIA's decision in NAM requires consideration of the actual circumstances of the crime. Not just the elements. If you're going to find a particularly serious crime without an aggravated felony. It's hard to fault them to argue the forfeit of that when we only decided that case after the briefing was done, I think. Well, I would disagree with that. Because even under the previous regime, it was clear that for purposes of asylum, you could establish a particularly serious crime without an aggravated felony. The start of a volley decision is exclusively about withholding of removal. So if they were going to develop the argument, they had every reason to develop it before. Finally, I would emphasize that this court does have authority to retain jurisdiction and maintain a stay. The court did that in Commonwealth. Why do we need to retain jurisdiction? We issue stays from time to time. It would be unusual to retain jurisdiction. We just issue an order staying removal. If the court thinks it has authority to do that without retaining jurisdiction, we have no problem with the retaining jurisdiction. Well, we need to do it before we lose jurisdiction. Right. We have no objection to the stay being maintained without withholding or retaining jurisdiction. If this court has no further questions, we'd ask the court. I just want to be clear what you're – so you want it – you want the legal issues decided, they're teed up. You want to remand and you want to stay. Well, our ideal – And you want us to throw the forfeiture flag on some things. Right. And if the court were to find forfeiture, that would be enough to remand with instructions to reopen. But if the court is not inclined to find forfeiture, we would at least want the issues that we've teed up resolved and a stay maintained. Okay. Thank you. Thank you, Mr. Rosen. And were you pro bono? I was. All right. The court thanks you and Mr. Estrada and your law firm for your services. Thank you very much, Ms. Frayer, for the very helpful argument as well. We'll take the matter under advisement.